In the United State District Court
for the District of Delaware

William F. Davis III
Plaintiff

v.

Raphael Williams,
First Correctional Medical,
C/O Davies, C/O Reginald Mayes,
Captain Emmit,
Debra Muscarella,
Nurse Jeremey and
Officer Lt. Fred Way

Civil Action No. 05-067-SLR

FILED
NOV 1 2007
U.S. DISTRICT COURT
DELAWARE

Exparte motion for Appointement of Counsel
Pursuant to 28 U.S.C. § 1915(e) (2000)

Plaintiff, William F. Davis III moves this Court to Appoint Counsel in the Above-Captioned Case. In Support there of the following is Asserted:

1.) The Controlling case for this matter for the third Circuit is Tabron v. Grace, 6 F.3d 147, 155-58 (3d Cir 1993).

2.) The Plaintiff has stated a claim upon which relief can be granted.

3.) The Plaintiff is unable to present this claim.

He has several dehabilitating mental disorders. Court filing thus far have been completed by fellow inmates who are scheduled to be released soon.

4.) The complexity of the legal issues is a factor in this request for reason set forth in paragraph 3, supra.

5) As the Plaintiff is a prisoner and the Defendents are Prison worker witness Credibility will be a issues wherefore Plaintiff, William F. Davis III Prays that this Honorable Court appoint Counsel in this matter.

6) A trial in this case will likely involve Conflicting testimony, and Counsel would better enable Plaintiff to present evidence and Cross examine witnesse

Date:

William F. Davis III
S.B.I 162762
Delaware Correctional Center
1181 Paddock Road
Smyrna, Del 19977

ence and of a quality acceptable within prudent professional standards,[163] and as "a level of health services reasonably designed to meet routine and emergency medical, dental and psychological or psychiatric care."[164]

In practice, providing care to prisoners generally means paying for the care, since most prisoners have little money and no medical insurance and are ineligible for public assistance.[165] The fact that the care may be expensive does not excuse prison officials from providing it.[166] If a prisoner does have money or insurance, it is probably not unconstitutional to bill the prisoner for the costs of medical care.[167]

Some states have statutes to this effect, usually covering prisoners in local jails who require treatment at outside hospitals.[168] But prison officials may not withhold medical care until the prisoner pays or agrees to pay; they must first provide the care and leave arguments about money until later.[169]

Recently some states have begun requiring prisoners to pay small amounts of money for medical visits. One such requirement was found unconstitutional because it would have required days and even weeks at inmate pay rates to earn the money, and would have fallen particularly harshly on the chronically ill who require more medical care than other prisoners.

The statute was then amended to charge only for physician visits without a referral from a nurse or physician's assistant, and that version was upheld as constitutional.[170]

Prisoners who are denied adequate medical care may use 42 U.S.C. § 1983 to sue prison medical care providers, including personnel and corporations who work as private contractors.[171] They may also seek damages for medical malpractice under state law.[172]

### 1. The Deliberate Indifference Standard

The Supreme Court has stated that "deliberate indifference to the medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."[173] Many courts have also applied the deliberate indifference standard to pretrainees under the Due Process Clause.[174] State law—statutes, regulations, or case law—may provide different standards.[175]

---

[163] Fernandez v. United States, 941 F.2d 1488, 1493 (11th Cir. 1991); United States v. DeCologero, 821 F.2d 39, 43 (1st Cir. 1987); Tillery v. Owens, 719 F.Supp. 1256, 1305 (W.D.Pa. 1989), aff'd, 907 F.2d 418 (3d Cir. 1990).

[164] Tillery v. Owens, 719 F.Supp. at 1301; accord, Ramos v. Lamm, 639 F.2d 559, 574 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981).

[165] Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 350 (3d Cir. 1987), cert. denied, 486 U.S. 1066 (1987), citing City of Revere v. Mass. General Hospital, 463 U.S. 239, 245-46, 103 S.Ct. 2979 (1983).

[166] Harris v. Thigpen, 941 F.2d 1495, 1509 (11th Cir. 1991); Langley v. Coughlin, 888 F.2d at 254; Ancata v. Prison Health Services, Inc., 769 F.2d 700, 705 (11th Cir. 1985); Yarbaugh v. Roach, 736 F.Supp. 318, 320 n.7 (D.D.C. 1990).

[167] Smith v. Linn County, 342 N.W.2d 861, 863 (Iowa 1984); Metro. Dade County v. P.L. Dodge Foundations, 509 So.2d 1170, 1173 (Fla.App. 1987); see City of Revere v. Mass. General Hospital, 463 U.S. at 245 n.7 (leaving question open); Matter of Commitment of F.H., 258 N.J. Super. 532, 610 A.2d 882, 884-85 (N.J.Super.A.D. 1992) (statute permitting state to recover costs of mental hospitalization from patient's assets did not apply to prisoners).

[168] Ancata v. Prison Health Services, Inc., 769 F.2d at 705 n.7 (11th Cir. 1985); Smith v. Linn County, 342 N.W.2d at 863; Salem Hospital v. Marion County, 307 Or. 213, 766 P.2d 376, 378-81 (Or. 1988); Montana Deaconess Medical Center v. Johnson, 232 Mont. 474, 758 P.2d 756, 757-58 (Mont. 1988); see also Smith v. Dept. of Corrections, 105 Or.App. 61, 804 P.2d 482, 484 (Or.App. 1990) (upholding rules requiring inmates to pay for certain prosthetic devices; constitutional claims not raised).

[169] Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d at 351.

[170] Collins v. Romer, 962 F.2d 1508, 1513-14 (10th Cir. 1992); see also Scott v. Angelone, A F.Supp. 1064, 1067 (D.Nev. 1991) (describing a similar statute but not ruling on validity), aff'd, 980 F.2d 738 (9th Cir. 1992).

[171] See cases cited in Ch. VIII, § B.1.c.

Some courts have held that you can sue a medical care corporation under only for injuries that result from policies of the corporation. Howell v. Evans, 712, 723-25 (11th Cir.), vacated as settled, 931 F.2d 711 (11th Cir. 1991); McIlwain v. William Hospital, 774 F.Supp. 986, 989-90 (E.D.Va. 1991); Miller v. Correctional Systems, Inc., 802 F.Supp. 1126, 1132 (D.Del. 1992). This means that if your injury by the deliberate indifference of doctors or other employees of such a corporation will probably have to sue them individually. See Hicks v. Frey, 992 F.2d (6th Cir. 1993) (upholding judgment against employee and dismissal of corporation).

[172] See § F.5 of this chapter on negligence and malpractice.

[173] Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

[174] Salazar v. City of Chicago, 940 F.2d 233, 237-38 (7th Cir. 1991); Martin v. County Comm'rs of Pueblo County, 909 F.2d 402, 406 (10th Cir. 1990); Molton v. Cleveland, 839 F.2d 240, 242-43 (6th Cir. 1988), cert. denied, 489 U.S. 1068 (1989); v. Kozakiewicz, 833 F.2d 468, 471-73 (3d Cir. 1987), cert. denied, 485 U.S. 99; also City of Revere v. Mass. General Hospital, 463 U.S. 239, 244, 103 S.Ct. (detainees' due process rights are "at least as great" as Eighth Amendment); Bryant v. Maffucci, 923 F.2d 979, 983 (2d Cir. 1991) (constitutional standard detainees' medical care remains unsettled), cert. denied, 112 S.Ct. 152 (1991).

One court has held that detainees "are entitled to a greater degree of than convicted inmates. They must be provided with 'reasonable medical the failure to supply it is reasonably related to a legitimate governmental Rhyne v. Henderson County, 973 F.2d 386, 391 (5th Cir. 1992) (citation However, the same court has stated that this "may indeed be a distinction difference" from the deliberate indifference standard. Cupit v. Jones, 835 (5th Cir. 1987). Another court has held that denial of medical care to an a has not been arraigned is governed by a Fourth Amendment "objective reasonableness standard, under which the presence or absence of punitive intent is not Freece v. Young, 756 F.Supp. 699, 703-04 (W.D.N.Y. 1991).

[175] See, e.g., Jorgenson v. Schiedler, 87 Or.App. 100, 741 P.2d 528, 529 (Or.App. 61, constitution requires "such medical care in the form of diagnosis and treatment reasonably available under the circumstances of [the prisoner's] confinement medical condition").

State law claims of malpractice or negligence may be litigated as tort claims

Under the deliberate indifference standard, courts will not take sides in disagreements with medical personnel's judgments or techniques.[176] In general, as long as there has been an exercise of professional judgment—even a mistaken or incompetent one—the courts will hold that the Constitution has been satisfied.[177] Negligence or medical malpractice generally do not violate the Constitution, with one important exception.

Several courts have held that "repeated examples of negligent acts which disclose a pattern of conduct by the prison medical staff" may add up to deliberate indifference.[178]

Deliberate indifference can be shown in various ways.[179] Sometimes it is demonstrated by acts or statements by prison personnel directly showing an indifferent or hostile attitude toward prisoners' medical

---

[176] court; these are discussed in § F.5 of this chapter.

Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Cf. Bailey v. Gardebring, 940 F.2d 1150, 1155 (8th Cir. 1991) (failure to provide treatment is not deliberate indifference if there is no accepted form of treatment for the patient's condition), cert. denied, 112 S.Ct. 1516 (1992).

There is an exception. Prison officials may not shop around until they get a medical opinion that suits their non-medical concerns and may not intentionally rely on a medical opinion that is without adequate basis. Hamilton v. Endell, 981 F.2d 1063, 1066-67 (9th Cir. 1992).

[177] See Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) (failure to diagnose broken ribs was not deliberate indifference); Givens v. Jones, 900 F.2d 1229, 1232-33 (8th Cir. 1990) (giving a prisoner medication to which he was allergic was negligence at worst); Benson v. Cady, 761 F.2d 335, 341 (7th Cir. 1985) (prescription of wrong drug was only malpractice); Owens-El v. United States Attorney General, 759 F.2d 349, 350 (4th Cir. 1985) (unnecessary continuation of dangerous drug was merely negligent); Supre v. Ricketts, 792 F.2d 958, 963 (10th Cir. 1986) (decision not to give female hormones to transsexual was not deliberately indifferent); Gordon v. Higgs, 716 F.Supp. 1351, 1353 (D.Nev. 1989) (failure to take an x-ray was no more than negligent); Mastrota v. Robinson, 534 F.Supp. 434, 436, 438 (E.D. 1982) (claim of failure to diagnose vertebral fracture and failure to insert drainage tube after surgery did not state an Eighth Amendment violation). But see Boyce v. Alizaduh, 595 F.2d 948, 952-53 (4th Cir. 1979) (giving a prisoner medication to which he was allergic could be deliberate indifference); Thomas v. Pate, 493 F.2d 151, 158 (7th Cir.) (same as Boyce), cert. denied, 419 U.S. 879 (1974).

[178] Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U.S. 1041 (1981); accord, Harris v. Thiggen, 941 F.2d 1495, 1505 (11th Cir. 1991); DeGidio v. Pung, 920 F.2d 525, 533 (8th Cir. 1990) ("consistent pattern of reckless or negligent conduct" establishes deliberate indifference); Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977) (acts that appear negligent in isolation may constitute deliberate indifference if repeated); Williams v. O'Leary, 805 F.Supp. 634, 638 (N.D.Ill. 1992) (deliberate indifference could be inferred from negligent treatment of long duration); Diaz v. Broglin, 781 F.Supp. 566, 564 (N.D.Ind. 1991); Langley v. Coughlin, 715 F.Supp. 522, 541 (S.D.N.Y. 1988); Robert E. v. Lane, 530 F.Supp. 930, 940 (N.D.Ill. 1981) ("A: pattern of similar instances presumptively indicates that prison administrators have, through their programs and procedures, created an environment in which negligence is unacceptably likely"); see also Kelley v. McGinnis, 899 F.2d 612, 616 (7th Cir. 1990) (noting court has not ruled "definitively" on this "potential theory of recovery").

[179] The general definition of deliberate indifference is discussed in § A.2 of this chapter. However, there are large numbers of cases applying the standard to prison medical care, and we focus on those cases here.

---

needs.[180] But most often, courts focus on facts that show tha[t] judgment was either not exercised or was not followed [or] exercised. In those fact situations, good intentions may not [save the defendant]. As one court stated:

> Deliberate indifference can be proved by showin[g] prison official's mental state. But delibe[rate] indifference is also a standard for measuring [the] adequacy of prison officials' responses to the kn[own] medical needs of inmates and their system [of] allowing inmates to make their needs known.[181]

There are several familiar fact patterns that courts have he[ld consti]tute deliberate indifference:

(a) Delay or denial of access to medical attention.[182] Hov[...] is tolerated, of course, depends on the seriousness and urge[ncy...]

---

[180] Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir. 1991) (r[...] prisoner with spinal injury he was "full of bullshit"); White v. Napole[on] 109 (3d Cir. 1990) (doctor allegedly burned the hand of an inmate who [...] feeling); Kersh v. Derozier, 851 F.2d 1509, 1510, 1513 (5th Cir. 1988) ([...] sight in one eye because police and jail personnel would not let him [...] out of it); Meriwether v. Faulkner, 821 F.2d 408, 413 (7th Cir.), ([...] transsexual prisoner and completely denied care), cert. denied, 484 [...] Mullen v. Smith, 738 F.2d 317, 318-19 (8th Cir. 1984) (prisoner was subj[ected...] and derision" in response to complaints of pain and inability to wa[lk...] Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (doctor refused to try to retta[ch] severed ear and threw it away in front of him); Phillips v. Mic[higan] Corrections, 731 F.Supp. 792, 800 (W.D.Mich. 1990) (doctor direct[ed...] offensive remarks to a transsexual prisoner), aff'd, 932 F.2d 969 (6th Ci[r...]; v. Coughlin, 715 F.Supp. 522, 541 (S.D.N.Y. 1988) (deliberate indiffe[rence] supported by "displays of hostility to prison psychiatrists to their fem[ale...] which sometimes led to outright refusals to treat"); Smallwood v. Rer[...] 182, 187-88 (N.D.Ill. 1989) (deliberate indifference claim was suppor[ted...] that a lieutenant overruled a decision to send the plaintiff to a hospital [...] and hit the plaintiff).

[181] Dean v. Coughlin, 623 F.Supp. 392, 402 (S.D.N.Y. 1985); accord, Weeks v[...] F.2d 185, 187 (6th Cir. 1993) ("... [A] determination of deliberate indif[ference...] require proof of intent to harm or a detailed inquiry into [the deten[dant's] mind.... [The] facts establish that he was deliberately indifferen[t...] Faulkner, 715 F.2d 269, 273 (7th Cir. 1983) ("good intentions" do not e[xcuse] systemic deficiency"), cert. denied, 468 U.S. 1217 (1984); Todaro v. W[ard, 565 F.2d 48] 1129, 1160 (S.D.N.Y.), aff'd, 565 F.2d 48 (2d Cir. 1977).

[182] Estelle v. Gamble, 429 U.S. at 104 ("intentionally denying or delaying a[ccess to] care"); Fields v. City of South Houston, Texas, 922 F.2d 1183, 1192 n. 1 [...] (evidence that police officers exercised wide discretion in summoning [...] prisoners); Miltier v. Beorn, 896 F.2d 848, 853-54 (4th Cir. 1990) (nurses [...] infirmary patient who lost consciousness and fell); Boswell v. Sherbu[rne Co., 849] F.2d 1117, 1122 (10th Cir. 1988) (delay in hospitalizing a miscarryin[g prisoner], denied, 488 U.S. 1010 (1989); H.C. by Hewett v. Jarrard, 786 F.2d 1080, [(7th] Cir. 1986) (isolation of injured inmate and deprivation of medical att[ention for] days); Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984) (similar to Bo[...] Prison Health Services, Inc., 769 F.2d 700, 704-05 (11th Cir. 1985) (re[fusal to make] specialty consultations without a court order); Robinson v. Morelan[d...] 889-90 (8th Cir. 1981) (weekend's delay in treating a broken hand); Hur[...] F.2d 940, 941-42 (5th Cir. 1978) (refusal to take a prisoner to a doctor [...]


medical need.[183]

(b) Denial of access to medical personnel qualified to exercise judgment about a particular medical problem. There are several variations on this theme. In some cases, personnel may simply lack medical qualifications or training.[184] In others, prisoners are denied access to medical personnel with the necessary specialized expertise.[185] Sometimes prisoners who need a physician's care are permitted to see only lower-level, non-physician personnel.[186]

(c) Failure to inquire into essential facts that are necessary to make a professional judgment. As one court put it, "We will defer to the informed judgment of prison officials as to an appropriate form of medical treatment. But if an informed judgment has not been made, the court may find that an eighth amendment claim has been stated."[187] Such cases may involve failure to conduct an adequate examination,[188] failure to ask nec-

---

[183] McGill v. Mountainside Police Dept. 720 F.Supp. 418, 423 (D.N.J. 1989) (police officers' ten to fifteen-minute delay in doctor's response to a patient in cardiac arrest supported liability). One court has stated that "an unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference." Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990) (four-hour delay in treating a broken foot), cert. denied, 110 S.Ct. 2624 (1990); Reed v. Dunham, 893 F.2d 285, 287 (10th Cir. 1990) (two-hour delay in treatment for stab wounds); see also Hodge v. Ruperto, 739 F.Supp. 873, 879 (S.D.N.Y. 1990) (police officers could be held liable for removing an arrestee from the hospital before his x-rays could be examined and his injuries treated).

[184] See, e.g., Bass by Lewis v. Wallenstein, 769 F.2d 1173, 1178, 1183 (7th Cir. 1985) (holding 24-hour delay in treating injuries sustained during arrest); Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978) (22-hour delay in treating a broken arm), cert. denied, 446 U.S. 928 (1980); Johnson v. Summers, 411 Mass. 82, 577 N.E.2d 301, 305 (Mass. 1991) (delay of hours in taking prisoner with a broken leg to the hospital). See F.3.e, F.3.f of this chapter. But see Mills v. Smith, 656 F.2d 337, 340 (8th Cir. 1981) (one and a half hour (1992)); Brown v. Commissioner of Cecil County Jail, 501 F.Supp. 1124, 1126-27 (D.Md. 1980) (delay of less than a week in treating gonorrhea was not deliberate indifference); Casey v. Lewis, 834 F.Supp. 1477, 1545 (D.Ariz. 1993) (making untrained pharmacist); Casey v. Lewis, 834 F.Supp. 1477, 1545 (D.Ariz. 1993) (making of medical judgments by security staff could constitute deliberate indifference).

[185] See § F.3.c of this chapter.

[186] See § F.3.c of this chapter.

[187] Tillery v. Owens, 719 F.Supp. 1256, 1308 (W.D.Pa. 1989), aff'd, 907 F.2d 418 (3d Cir. 1990).

[188] Tillery v. Owens, 719 F.Supp. at 1306, 1308 (citing "cursory" sick call inquiries and in which the patient was intake physical examinations that were not "thorough" and in which the patient was never touched); see §§ F.3.a, F.3.b of this chapter. But see Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) (failure to perform a physical examination, resulting in failure to diagnose broken ribs, was not deliberate indifference). In our opinion, Brown was incorrectly decided, and the failure to perform

---

essary questions or take a history,[189] or failure to conduct tests [or] prisoner's symptoms call for.[190]

(d) Interference with medical judgment by non-medical personnel. These factors can include staffing that is so inadequate that medical personnel lack the time to do their jobs,[192] facilities and procedures that do not allow for proper diagnosis and treatment,[193] and rules or procedures restricting medical care on non-medical grounds.[194]

---

so obvious an examination should be considered deliberate indifference.

[189] Liscio v. Warren, 901 F.2d 274, 276-77 (2d Cir. 1990) (physician failed to inquire into cause of an arrestee's delirium and thus failed to diagnose alcohol withdrawal); Durmer v. O'Carroll, 991 F.2d 64, 68-69 v. Alizaduh, 595 F.2d 948, 952-53 (4th Cir. 1979) (prison doctor ignored a complaint of allergy to medication).

[190] Miltier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990) (doctor failed to perform cardiac disease in patient with symptoms that called for them); Medcalf v. Kansas, 626 F.Supp. 1179, 1183 (D.Kan. 1986) (doctor failed to order tests though suggested by "the elemental and classic symptoms of a brain tumor"); Weaver, 617 F.Supp. 40, 44 (N.D.Ga. 1985) (prison doctor refused to conduct diagnostic tests on a prisoner with symptoms of optic disease leading to blindness).

[191] See West v. Atkins, 487 U.S. 42, 56 n.15, 108 S.Ct. 2250 (1988) (acknowledging nonmedical functions of prison life inevitably influence the nature, timing and medical care provided to inmates); Durmer v. O'Carroll, 991 F.2d 64, 68-69 1993) (holding that delay of treatment for non-medical reasons could constitute deliberate indifference); Hamilton v. Endell, 981 F.2d 1063, 1066-67 (9th Cir. (holding that prison officials' disregarding a surgeon's recommendation for non-medical grounds could constitute deliberate indifference); Delker v. Maryland, F.Supp. 1390, 1398, 1401 (D.Or. 1994).

[192] See § F.3.c of this chapter.

[193] Matzker v. Herr, 748 F.2d 1142, 1147 (7th Cir. 1984) (lack of facilities), overruled on other grounds, Salazar v. City of Chicago, 940 F.2d 233, 240 (7th Cir. 1991); Green v. Carlson, 581 F.2d 669, 671, 675 (7th Cir. 1978) (failure to provide coverage for emergencies, failure to maintain working respirator, staff who did not know how to operate emergency equipment), aff'd, 446 U.S. 14 (1980); Lightfoot v. Walker, F.Supp. 504, 517, 527 (S.D.Ill. 1980) (inadequate system of medical records).

A number of cases have held that sick call procedures that did not permit an adequate assessment of the prisoner's complaint are constitutionally inadequate. See § this chapter. Inadequate physical facilities and medical records systems have also been found to violate the Constitution. See §§ F.3.e, F.3.f of this chapter.

[194] Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, Cir. 1987) (restrictions on abortion unrelated to individual treatment needs), cert. denied, 486 U.S. 1066 (1988); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986) (budget restrictions); Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704-05 (11th Cir. (refusal to provide specialty consultations without a court order); Casey v. Lewis, F.Supp. at 1545 (security staff's overruling of medical orders); United States v. Michigan, 680 F.Supp. 928, 1002, 1043-45 (W.D.Mich. 1987) (security or transportation constraints).

There are a few situations in which courts have upheld security-based restrictions on medical treatment. Prisons may limit the availability of narcotics and other drugs because of their potential for abuse as long as they provide other treatment for prisoners' pain and other medical problems. Lawhorn v. Duckworth, 736 F.Supp. 1505 (N.D.Ind. 1987), aff'd, 902 F.2d 37 (7th Cir. 1990) (Valium); Wolfel v. Ferguson, F.Supp. 756, 760-61 (3d Cir. 1979) (jail officials could limit methadone treatment); see also Inmates of Allegheny County Jail v. Pierce, 754, 760-61 (3d Cir. 1979) (jail officials could limit methadone treatment); court has held that female hormone treatment may be denied to male transsexuals because of the security problems in placing them in either male or female institutions. White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988). See § F.4.a of this chapter for discussion of transsexuals in prison.

(e) Failure to carry out medical orders.[195] Such cases often involve the failure to provide prescribed medication[196] or the failure to act on medical recommendations for surgery or for other specialized care,[197] including hospitalization or other care not available in the prison.[198]

In addition to these "no professional judgment" cases, there are also many decisions that say, in effect, that not every judgment by a doctor is a medical judgment,[199] or that extreme cases of bad judgment by medical

---

personnel constitute deliberate indifference. For example, one federal peals court has held that treatment "so grossly incompetent, inadequate or excessive as to shock the conscience" or "so inappropriate as to constitute intentional maltreatment" violates the Eighth Amendment.[200]

In these cases, courts give substantial weight to expert testimony criticizing the prisoner's care, rather than dismissing it as a difference of opinion among doctors.[201] Most cases of this nature involve not just bad but also very serious medical conditions, often leading to death, disability or disfigurement.[202] Their reasoning may not be extended to less serious cases.

---

[195] Estelle v. Gamble, 429 U.S. at 105 ("intentionally interfering with the treatment once prescribed"); Aswegan v. Bruhl, 965 F.2d 676, 677-68 (8th Cir. 1992) (failure to honor doctor's orders and refrain from cuffing the plaintiff's hands behind his back); Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (nurse's failure to perform prescribed dressing change); Martin v. Board of County Comm'rs of Pueblo County, 909 F.2d 402, 406 (10th Cir. 1990) (moving an arrestee with a broken neck against doctor's orders); Payne v. Lynaugh, 843 F.2d 177, 178 (5th Cir. 1988) (denial of access to recommended life-saving equipment); Gill v. Mooney, 824 F.2d 192, 195-96 (2d Cir. 1987) (denial of gymnasium time prescribed as rehabilitation therapy); Arnold on behalf of H.B. v. Lewis, 803 F.Supp. 246, 257 (D.Ariz. 1992) (overriding of medical decisions by security staff); Jones v. Evans, 544 F.Supp. 769, 774-76 (N.D.Ga. 1982) (confiscation of prescribed back brace); Goodman v. Wagner, 553 F.Supp. 255, 257 (E.D.Pa. 1982) (failure to follow a doctor's orders for wound treatment); Johnson v. Harris, 479 F.Supp. 333, 335-37 (S.D.N.Y. 1979) (failure to provide special diet for diabetic).

One court has recently held that prison officials' failure to obey a medical order for showers and dressing changes did not constitute deliberate indifference. DesRosiers v. Moran, 949 F.2d 15, 19-20 (1st Cir. 1991). In our opinion this decision is contrary to Estelle v. Gamble's reference, cited above, to "intentionally interfering with the treatment once prescribed" as a form of deliberate indifference.

[196] Aswegan v. Bruhl, 965 F.2d at 677-78; Hill v. Marshall, 962 F.2d 1209, 1213-14 (6th Cir. 1992), cert. denied, 113 S.Ct. 2992 (1993); Johnson v. Hay, 931 F.2d 456, 461-62 (8th Cir. 1991); Boretti v. Wiscomb, 930 F.2d at 1156; Johnson v. Hardin County, Ky., 908 F.2d 1280, 1284 (6th Cir. 1990); Ellis v. Butler, 890 F.2d 1001, 1003-04 (8th Cir. 1989); Mitchell v. Aluisi, 872 F.2d 577, 581 (4th Cir. 1989) (confiscation of prescribed medication); Williams v. O'Leary, 805 F.Supp. 634, 638 (N.D.Ill. 1992); Lowe v. Board of Comm'rs, County of Dauphin, 750 F.Supp. 697, 700 (M.D.Pa. 1990) (indiscriminate confiscation of medication from all incoming inmates); Goodman v. Wagner, 553 F.Supp. 255, 257 (E.D.Pa. 1982).

Some courts have held that denial or delay of prescribed medication does not violate the Eighth Amendment if the delay is short or the consequences are not serious. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); Martin v. New York City Dept. of Corrections, 522 F.Supp. 169, 170 (S.D.N.Y. 1981); Russell v. Enser, 496 F.Supp. 320, 326-28 (D.S.C. 1979), aff'd, 624 F.2d 1095 (4th Cir. 1980); Burrascano v. Levi, 452 F.Supp. 1066, 1069 (D.Md. 1978), aff'd, 612 F.2d 1306 (4th Cir. 1979); see also Harris v. Mapp, 719 F.Supp. 1317, 1324-25 (E.D.Va. 1989) (failure to provide prescribed Dilantin was merely negligent; the prisoner died), aff'd, 907 F.2d 1138 (4th Cir. 1990).

[197] Johnson v. Lockhart, 941 F.2d 705, 706-07 (8th Cir. 1991) (10-month delay in surgery that doctor recommended be done within days); Howell v. Evans, 922 F.2d 712, 723 (11th Cir. 1991) (failure to act on a medical judgment that prisoners needed access to a respiratory therapist), vacated as settled, 931 F.2d 711 (11th Cir. 1991); Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989) (failure to perform surgery recommended by prison doctor); Dace v. Solem, 858 F.2d 385, 387-88 (8th Cir. 1988) (failure of prison doctors to carry out surgery scheduled before plaintiff's incarceration); LaFaut v. Smith, 834 F.2d 389, 393-94 (4th Cir. 1987) (failure to provide rehabilitation therapy recommended by orthopedic specialist); Johnson-El v. District of Columbia, 579 A.2d 163, 169 (D.C. 1990) (failure to take prisoner to dermatologist).

[198] See § F.3.d of this chapter.

[199] See, e.g., Hughes v. Joliet Correctional Center, 931 F.2d 425, 428 (7th Cir. 1991) (evidence that medical staff treated the plaintiff "not as a patient, but as a nuisance," and "were insufficiently interested in his health to take even minimal steps to guards against the

---

possibility that the injury was severe" could support a finding of deliberate indifference). Courts have observed that the Constitution is violated "if doctors by the doctors." Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974); accord, Monmouth County Jail Inmates v. Lanzaro, 834 F.2d at 347; Maynard v. New Jersey, 719 F.Supp. 292, 295 (D.N.J. 1989) (evidence that prisoner received only palliative treatment for severe complications of AIDS raised a factual question of deliberate indifference).

[200] Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (emphasis supplied); Howell v. Evans, 922 F.2d 712, 719 (11th Cir. 1991) ("the contemporary standards opinions of the medical profession are highly relevant in determining what constitutes deliberate indifference"), vacated as settled, 931 F.2d 711 (11th Cir. 1991); Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990) (plaintiff should be permitted to prove treatment "so deviated from professional standards that it amounted to deliberate indifference"); Rosen v. Chang, 811 F.Supp. 754, 760-61 (D.R.I. 1993) ("incompetent and reckless inadequate examination by a licensed physician constitute deliberate indifference"). Another court recently held that a deliberate indifference claim was stated by "allegations that the doctor intended to inflict pain on prisoners without any medical justification and . . . the sheer number of instances in which the doctor allegedly insisted on continuing courses of treatment the doctor knew were painful, ineffective, or entailed substantial risk of serious harm to the prisoners." White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

[201] "Whether an instance of medical misdiagnosis resulted from deliberate indifference or negligence is a factual question requiring exploration by expert witnesses." Rogers v. Evans, 792 F.2d at 1058; accord, Smith v. Jenkins, 919 F.2d at 94 (suggesting that the district court "may" appoint an independent expert or obtain an opinion from a prisoner's pre-incarceration doctor); Liscio v. Warren, 901 F.2d 274, 276 (2d Cir. 1990) (expert affidavit describing a prisoner's medical care as "severely mismanaged" supported a claim of deliberate indifference); Miltier v. Beorn, 896 F.2d 848, 1 Cir. 1990); Mandel v. Doe, 888 F.2d 783, 790 (11th Cir. 1989); Medcalf v. State of 626 F.Supp. 1179, 1190 (D.Kan. 1986) (prisoner's expert's description of medical "gross negligence" raised a factual question for the jury); see § F.2.b of this chapter; 231-32 for a further comment on medical experts. But see Howell v. Evans, 922 F.2d 722 (expert affidavit stating that a prison doctor "deviated from established standards but not that his actions were "grossly inadequate" or "plainly wrong," did not state deliberate indifference claim), vacated as settled, 931 F.2d 711 (11th Cir. 1991).

[202] Waldrop v. Evans, 871 F.2d 1030, 1032-36 (11th Cir.) (severe self-mutilation followed psychiatric neglect), rehearing denied, 880 F.2d 421 (11th Cir. 1989); Rogers v. Evans, 792 F.2d at 1060-62 (suicide following psychiatric neglect); Carswell v. Bay County, 854 F.2d 454, 455-57 (11th Cir. 1988) (treatment of diabetic suffering catastrophic weight loss with laxatives and pain-killers); Wood v. Sunn, 865 F.2d 982, 989-90 (9th Cir. 1988) (doctors' disregarded complaints because they assumed the prisoner's problems were psychological; he lost the ability to urinate), vacated, 880 F.2d 1011 (9th Cir. 1989); v. Chang, 811 F.Supp. 754, 760 (D.R.I. 1990) (death from untreated appendicitis); Brierton, 431 F.Supp. 50, 51-52 (N.D.Ill. 1976) (fatal administration of contra-indicated medication states a claim). Some of the cases cited in n. 191 of this section concern the failure to perform tests are similar.

omissions if they amount to deliberate indifference,[207] but in some cases the fault may be with correctional personnel who keep you from getting to see the medical staff or interfere with treatment that has been prescribed.[208]

Wardens and other correctional supervisors are not deliberately indifferent when they act in reliance on the judgments of qualified medical personnel.[209]

But they may be deliberately indifferent if they fail to provide adequate staff[210] or qualified staff,[211] if they maintain policies that interfere with adequate medical care,[212] if they fail to remedy unlawful conditions that they know or should know about,[213] or if they otherwise fail to carry out

---

[207] See § F.1 of this chapter.

[208] Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990), cert. denied, 110 S.Ct. 262 (1990); Kelley v. McGinnis, 899 F.2d 612, 616 (7th Cir. 1990); Parrish v. Johnson, 800 F.2d 600, 605 (6th Cir. 1986); H.C. by Hewett v. Jarrard, 786 F.2d 1080, 1086-87 (11th Cir. 1986); Lewis v. Cooper, 771 F.2d 334, 336-37 (7th Cir. 1985); Harris v. O'Grady, 80 F.Supp. 1361, 1366 (N.D.Ill. 1992).

[209] As one court observed, a warden is "not responsible for second-guessing his medical staff." Tomarkin v. Ward, 534 F.Supp. 1224, 1232 (S.D.N.Y. 1982); accord, Miltier v. Beorn, 896 F.2d 848, 854-55 (4th Cir. 1990); White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988); Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987); McCracken v. Jones, 562 F.2d 22, 2 (10th Cir. 1977), cert. denied, 435 U.S. 917 (1978); see also Estate of Cartwright v. City o Concord, Cal., 856 F.2d 1437, 1438 (9th Cir. 1988) (jail staff were not liable for waiting for an ambulance instead of personally administering CPR).

Prison officials may not, however, shop around until they get a medical opinion that suits their non-medical plans for a prisoner. See Hamilton v. Endell, 981 F.2d 1062 1066-67 (9th Cir. 1992).

[210] Greason v. Kemp, 891 F.2d 829, 837-40 (11th Cir.1990); Anderson v. City of Atlanta, 77 F.2d 678, 686-89 (11th Cir. 1985); Miranda v. Munoz, 770 F.2d 255, 260-62 (1st Cir. 1985)

[211] Howell v. Evans, 922 F.2d 712, 723 (11th Cir. 1991), vacated as settled, 931 F.2d 711 (11t Cir. 1991); Bass by Lewis v. Wallenstein, 769 F.2d 1173, 1184-86 (7th Cir. 1985); Langle v. Coughlin, 715 F.Supp. 522, 540 (S.D.N.Y. 1988); Medcalf v. State of Kansas, 62 F.Supp. 1179, 1186 (D.Kan. 1986); see also § F.3.c of this chapter.

[212] Boswell v. Sherburne County, 849 F.2d 1117, 1123 (10th Cir. 1988) (chief jailer an sheriff could be held liable based on evidence that "inadequately trained jailers wer directed to use their own judgment about the seriousness of prisoners' medical need and that medical care was restricted in order to save money), cert. denied, 488 U.S. 10 (1989); Meade v. Grubbs, 841 F.2d 1512, 1531 (10th Cir. 1988) (the failure of the sta health commissioner to carry out statutory duties could be deliberate indifference Jones v. Johnson, 781 F.2d 769, 771-72 (9th Cir. 1986) (supervisory officials could liable for budgetary restrictions on medical care); Bass by Lewis v. Wallenstein, 7 F.2d at 1184-86 (damages awarded against assistant warden and medical administr based on deficiencies in sick call procedure); Ancata v. Prison Health Services, Inc.,7 F.2d 700, 705-06 (11th Cir. 1985) (sheriff could be held liable for requiring court orde for outside medical care); Green v. Carlson, 581 F.2d 669, 671, 675 (7th Cir. 1978) (faih to provide emergency coverage where no doctor was on duty stated a claim against t chief medical officer), aff'd, 446 U.S. 14 (1980).

[213] Aswegan v. Bruhl, 965 F.2d 676, 677-78 (8th Cir. 1992) (Deputy Warden and Securi Director held liable for failure to correct known violations of doctors' orders); Hill Marshall, 962 F.2d 1209, 1213 (6th Cir. 1992) (Deputy Superintendent of Treatment h liable for failure to respond to complaints despite his knowledge of a breakdown in t medical system), cert. denied, 113 S.Ct. 2992 (1993); Greason v. Kemp, 891 F.2d 829, 8 (11th Cir. 1990) (prison system mental health director could be held liable for failure remedy known deficiencies in mental health services); LaFaut v. Smith, 834 F.2d 38

---

Prison personnel sometimes respond to allegations of deliberate indifference by saying that they did provide some medical care, or that your medical care was adequate in general. This claim may not be a valid defense; they must respond to the *particular* claim of deliberate indifference that you raise.

For example, one prisoner alleged that he suffered a broken nose, broken teeth, and an eye injury in a fight, but he only got treatment for the broken nose; the court ruled that his allegations stated a claim for deliberate indifference.[203]

In another case, a pregnant woman alleged a five-hour delay in taking her to the hospital when she began to miscarry; the court held that she had raised a factual issue of deliberate indifference concerning that incident even though she received "extensive" medical attention on other occasions.[204] The deliberate indifference standard "does not necessarily excuse one episode of gross misconduct merely because the overall pattern reflects general attentiveness."[205]

### a. Suing the Right Defendants

In pursuing a deliberate indifference claim, you must think closely about exactly *who* was deliberately indifferent—that is, who caused the constitutional violation and can be held liable for it.[206] Doctors and other medical personnel can be liable for the consequences of their own acts or

One court has made this point explicit, stating that "life-threatening" or "fast-developing" conditions call for closer judicial scrutiny of prison medical care. Liscio v. Warren, 901 F.2d at 277.

[203] Matzker v. Herr, 748 F.2d 1142, 1147-48 (7th Cir. 1984), overruled on other grounds, Salazar v. City of Chicago, 940 F.2d 233, 240 (7th Cir. 1991).

[204] Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984); see also Smith v. Jenkins, 919 F.2d 90, 93-94 (8th Cir. 1990) (mere proof of diagnosis by a doctor did not require dismissal of case; district court directed to review prisoner's medical records); Williams v. O'Leary, 805 F.Supp. 634, 638 (N.D.Ill. 1992) ("Mere volume of medical attention is insufficient to defend an Eighth Amendment claim."); Henderson v. Harris, 672 F.Supp. 1054, 1059 (N.D.Ill. 1987) (the fact that the prisoner received some care did not entitle the warden to have the case dismissed). Cf. Knop v. Johnson, 667 F.Supp. 512, 524-25 (W.D.Mich. 1987) (evidence that the prison system spends a lot of money and hires a lot of staff does not refute a deliberate indifference claim about the medical care system), aff'd in part and rev'd in part on other grounds, 977 F.2d 996 (6th Cir. 1992), cert. denied, 113 S.Ct. 1415 (1993).

[205] Murrell v. Bennett, 615 F.2d 306, 310 n. 4 (5th Cir. 1980); see McGuckin v. Smith, 974 F.2d 1050, 1060-61 (9th Cir. 1992) (a finding that maltreatment was an "isolated exception" to the prisoner's overall treatment militates against a finding of deliberate indifference, but a single "egregious" failure may support a deliberate indifference claim); Jones v. Evans, 544 F.Supp. 769, 775 (N.D.Ga. 1982) (a defendant may respond to a claim of denial of care or inadequate care by "establishing he was generally attentive to the prisoner's needs"; a claim of interference with prescribed care is less subject to that defense).

[206] The "causation" or "personal involvement" requirement applied in civil rights actions is discussed in Ch. VIII, § B.4.a.

## PRISONERS' SELF-HELP LITIGATION MANUAL

their responsibilities to provide adequate medical care.[214]

City or county governments may be held liable on a similar basis.[215] In your complaint and other papers, you should be specific about the reasons you think a particular defendant is liable for a medical care deprivation.

### b. Remedies for Deliberate Indifference

Under the deliberate indifference standard, you may seek either an injunction requiring prison officials to give you proper medical care in the future,[216] or damages for their past failure to provide proper care, or both.

The two don't always go together. A court may find that you entitled to damages for what happened in the past, but you may entitled to an injunction to avoid harm in the future.[218]

Conversely, if you have received adequate care (or gotten well it) by the time the court decides the case, you may not need an injunction but you can still receive damages for any pain and suffering you enced while waiting to receive proper treatment.[219]

### 2. Serious Medical Needs

Under the Constitution, prison officials need provide care only rious medical needs."[220] Some courts have held that a medical need rious if it "has been diagnosed by a physician as mandating treatment is so obvious that even a lay person would easily recognize the sity for a doctor's attention."[221]

Prisoners may also seek injunctions against conditions that may cause illness future, such as exposure to infectious diseases or unsafe drinking water. H McKinney, ___ U.S. ___, 113 S.Ct. 2475, 2480-81 (1993). Such conditions are c further in § G.3.b of this chapter.

---

[213] 392-94 (4th Cir. 1987) (damages awarded against warden who was "fully advised" of failure to provide a paraplegic inmate with adequate toilet facilities and rehabilitation therapy); Thompkins v. Belt, 828 F.2d 298, 305 (5th Cir. 1987) (Sheriff could be held liable if he knew the plaintiff's requests for medical treatment were being ignored); Bass by Lewis v. Wallenstein, 769 F.2d at 1184-86 (assistant warden and medical administrator could be held liable for failure to act on previous warnings of inadequate medical care); Langley v. Coughlin, 715 F.Supp. at 544-49 (Commissioner, Superintendent, medical unit chief and security captain could be held liable based on their knowledge of deficiencies in mental health care); Jones v. Evans, 544 F.Supp. 769, 777 (N.D.Ga. 1982) (warden and commissioner could be held liable for inadequate training, supervision and direction of subordinate employees); Tomarkin v. Ward, 534 F.Supp. 1224, 1232 (S.D.N.Y. 1982) (warden could be responsible if he knew of denial of medical care in solitary confinement).

[214] Howell v. Burden, 12 F.3d 190, 192-94 (11th Cir. 1994) (Superintendent's "administrative authority" could support liability); Johnson v. Lockhart, 941 F.2d 705, 707 (8th Cir. 1991) ("Abdication of policy-making and oversight responsibilities can reach the level of deliberate indifference"; delays in prescribed surgery could support administrators' liability); Al-Jundi v. Mancusi, 926 F.2d 235, 239-40 (2d Cir. 1991) (Superintendent's failure to plan for medical care after violent suppression of prison disturbance would constitute deliberate indifference), cert. denied, 112 S.Ct. 182 (1991); Meade v. Grubbs, 841 F.2d at 1531 (the failure of the state health commissioner to carry out statutory duties could be deliberate indifference); Brown v. Coughlin, 758 F.Supp. 876, 889 (S.D.N.Y. 1991) (Commissioner and Superintendent have personal duties to ensure adequate medical services).

[215] Colle v. Brazos County, Tex., 981 F.2d 237, 245 (5th Cir. 1993) (inadequate monitoring, lack of arrangements for transfers to medical facilities); Cabrales v. County of Los Angeles, 864 F.2d 1454, 1460-61 (9th Cir. 1988) (inadequate staffing), vacated, 490 U.S. 1087 (1989), reinstated, 886 F.2d 235 (9th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); Anderson v. City of Atlanta, 778 F.2d at 685-89 (inadequate staffing); Ancata v. Prison Health Services, Inc., 769 F.2d at 705-06 (policy of limited funding and requiring court orders for certain medical treatment); Garcia v. Salt Lake County, 768 F.2d 303, 307-08 (10th Cir. 1985) (inadequate staffing and policy of admitting unconscious persons to jail).

If local governments establish adequate procedures for providing medical care to prisoners, they can't be held liable based on isolated failures of their employees to follow them. Holmes v. Sheahan, 930 F.2d 1196, 1201-02 (7th Cir. 1991), cert. denied, 112 S.Ct. 423 (1991); Bryant v. Maffucci, 923 F.2d 979, 986 (2d Cir. 1991), cert. denied, 112 S.Ct. 152 (1991).

Municipal liability in civil rights actions requires proof that the violation was caused by a municipal policy. This requirement is discussed in Ch. VIII, § B.4.b. Similarly, a private corporation that provides prison medical care can only be held liable if the legal violation results from a corporate policy. See cases cited in § F of this chapter, n. 171.

[216] See, e.g., Arnold on behalf of H.B. v. Lewis, 803 F.Supp. 246, 258-57 (D.Ar Yarbaugh v. Roach, 736 F.Supp. 318, 320 (D.D.C. 1990); Phillips v. Michigan Corrections, 731 F.Supp. 792, 800-01 (W.D.Mich. 1990), aff'd, 932 F.2d 969 (6th C

[217] See, e.g., Aswegan v. Bruhl, 965 F.2d 676, 677 (8th Cir. 1992); Hill v. Marshall, 1209, 1215-17 (6th Cir. 1992), cert. denied, 113 S.Ct. 2992 (1993); Leach v. Shelb Sheriff, 891 F.2d 1241 (6th Cir. 1989), cert. denied, 495 U.S. 932 (1990); Mandel v. F.2d 783 (11th Cir. 1989). Other cases involving damage awards are cited thr the following sections on medical care.

[218] Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989); Crooks v. Nix, 872 F 804-05 (8th Cir. 1989) (damage claim properly dismissed, but court shoul current medical records before ruling on injunctive claim); compare Lee v. M 543 F.Supp. 386, 391-93 (D.Kan. 1982) (granting injunction to paraplegic further medical neglect) with Lee v. McManus, 589 F.Supp. 633, 638-41 (D.K (denying damages based on various defenses).

[219] Boretti v. Wiscomb, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (prisoner could get for failure to treat his wound even though it had healed); Hathaway v. Coug F.2d 48 (2d Cir. 1988) (claim for delay in surgery should not have been dismiss the surgery was performed); H.C. by Hewett v. Jarrard, 786 F.2d 1080, 1083, 1 Cir. 1986) (damages awarded for three-day denial of medical care with no pe injury resulting); Robinson v. Moreland, 655 F.2d 887, 890 (8th Cir. 1981); West 571 F.2d 158 (3d Cir. 1978) (similar to Hathaway); Isaac v. Jones, 529 F.Supp. (N.D.Ill. 1981).

[220] Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

The seriousness of mental health needs is discussed in § F.4.a of this chap 279-80; see also cases cited in n. 294 concerning transsexualism.

[221] Duran v. Anaya, 642 F.Supp. 510, 524 (D.N.M. 1986); accord, Johnson v. Busbee, 349, 351 (8th Cir. 1991); Gaudreault v. Municipality of Salem, Mass., 923 F.2d (1st Cir. 1990); Monmouth County Correctional Institution Inmates v. Lanzaro, at 347; Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), cert. denied, 450 U (1981) and cases cited; Maynard v. New Jersey, 719 F.Supp. 1054, 1056 (D.N Henderson v. Harris, 672 F.Supp. 1054, 1059 (N.D.Ill. 1987) (hemorrhoids McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) ("the existence of a