**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WILLIAM F. DAVIS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-67-SLR |
| | ) | |
| WARDEN RAPHAEL WILLIAMS, C/O DAVIES, CAPTAIN EMMIT C/O REGINALD MAYES, DEBRA MUSCARELLA, NURSE JEREMY, and OFFICER FRED WAY, | ) | Jury Trial Requested |
| | ) | |
| Defendants. | ) | |

**STATE DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REPLY BRIEF IN SUPPORT OF THE STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [RE: D.I. 58, 60, 61, 69]**

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for the State Defendants

Dated: November 15, 2007

## TABLE OF CONTENTS

Table of Citations ............................................................................ Ii

Nature and Stage of the Proceedings .................................................... 1

Summary of the Argument ................................................................. 2

Statement of the Facts ...................................................................... 4

Argument .......................................................................................... 5

I. State Defendants Are Immune From Liability In Their Official Capacities Pursuant To The Eleventh Amendment ...................... 5

II. Davis Did Not Exhaust The Administrative Remedies Available To Him. Therefore His Claims Should Be Dismissed Under The PLRA . 6

III. Warden Williams Cannot Be Held Liable For Davis's Claims Based Solely On The Theory Of Respondeat Superior .......................... 7

IV. Warden Williams Cannot Be Held Liable Where He Had No Personal Involvement In The Alleged Deprivation Of Davis's Rights ........... 8

V. Davis's Bald And Unsubstantiated Allegations Are Not Supported By The Record. Therefore No Fair Minded Jury Could Return A Verdict For Davis On The Failure To Protect, Deliberate Indifference Or Failure To Investigate Claims ............................................ 9

VI. State Defendants Are Immune From Liability In Their Individual Capacities Pursuant To The Doctrine Of Qualified Immunity .......... 13

Conclusion ........................................................................................ 14

# TABLE OF CITATIONS

**Cases**

*Anderson v. Creighton*,
483 U.S. 635, 640 (1987) ………………………………………………... 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986) ………………………………………………... 5

*Brookins v. Williams*,
402 F.Supp.2d 508, 512 (D. Del. 2005) ……………………………………. 8

*Carter v. Exxon Company USA*,
177 F.3d 197, 202 (3d Cir. 1999) ……………………………………….... 5

*Durmer v. O'Carroll*,
91 F.2d 64, 67 (3d Cir. 1993) ……………………………………………. 11

*Farmer v. Brennan*,
511 U.S. 825, 833 (1994) ………………………………………………... 9

*Harlow v. Fitzgerald*,
457 U.S. 800, 818 (1982) ………………………………………………... 13

*Porter v. Nussle*
534 U.S. 516, 524 (2002) ………………………………………………... 6

*Rode v. Dellarciprete*,
845 F.2d 1195, 1207 (3d Cir. 1988) ……………………………………... 7-8

*Sample v. Diecks*
885 F.2d 1099, 1116-17 (3d Cir. 1989) …………………………………. 7

*Will v. Michigan Dept. of State Police*,
491 U.S. 58, 71 (1989) …………………………………………………... 5-6

**Statutes, Rules and Other Authority**

42 *U.S.C.* § 1983 ……………………………………………………………… *Passim*

42 *U.S.C.* § 1997e(a) ………………………………………………………….. 6

Federal Rule of Civil Procedure 56(c) …………………………………………... 5

**NATURE AND STAGE OF THE PROCEEDINGS**

On October 10, 2007, Plaintiff William F. Davis, III filed a Motion for Summary Judgment and Opening Brief in support asserting that the defendants violated his constitutional rights when they failed to protect him from a fight he had with another inmate and when they were deliberately indifferent to his medical needs following the fight. (D.I. 58, 59).

Less than one week later, on October 15, 2007, State Defendants Warden Raphael Williams, C/O Kerry Davies, Deputy Warden Mark Emig, and C/O Reginald Mays (the "State Defendants") filed their Motion for Summary Judgment (the "Motion for Summary Judgment") requesting that the Court grant summary judgment in favor of the State Defendants and against Davis as to all claims. (D.I. 60). State Defendants also filed an Opening Brief in Support of their Motion for Summary Judgment offering facts and evidence to show that the State Defendants did not violate Davis's constitutional rights. (D.I. 61).

On November 1, 2007, Davis filed his "Answer to Summary Judgment Argument" responding to the State Defendants' Motion for Summary Judgment and Opening Brief. (D.I. 69). This is State Defendants' Answering Brief in Opposition to Plaintiff's Motion for Summary Judgment (Re: D.I. 58) and Reply Brief in Support of Their Motion for Summary Judgment (Re: D.I. 60, 61, 69).

## SUMMARY OF THE ARGUMENT

I.      The State Defendants are not considered "persons" for purposes of 42 U.S.C. § 1983. As a result, the Eleventh Amendment, in conjunction with the State of Delaware's sovereign immunity, protect the State Defendants from liability for Davis's claims. Therefore this Court lacks jurisdiction over the State Defendants in their official capacities and Davis cannot maintain his claims against State Defendants in their official capacities.

II.     The events in Davis's lawsuit occurred while he was incarcerated at the Howard R. Young Correctional Institution ("HRYCI"). As an incarcerated individual challenging his conditions of confinement, Davis was required to exhaust HRYCI's administrative remedies prior to filing his lawsuit in accordance with the Prison Litigation Reform Act. In this case Davis filed a grievance but was satisfied with the results of the grievance and did not pursue all the steps of HRYCI's grievance process. Therefore Davis did not exhaust his available administrative remedies and he is prevented from pursuing his claims in accordance with the PLRA.

III.    Davis's claims against Warden Williams are based solely on the Warden's supervisory responsibilities. Because Davis cannot maintain an action under 42 U.S.C. § 1983 against Warden Williams solely on the theory of respondeat superior and because Warden Williams was not deliberately indifferent to Davis's plight, the claims against Warden Williams should be dismissed.

IV.     A Plaintiff filing a lawsuit pursuant to 42 U.S.C. § 1983 is required to show that the defendant had personal involvement in the alleged wrongs.  In this case, the record is clear that Warden Williams had no personal involvement in the incidents alleged in Davis's Complaints.  Therefore, Davis cannot maintain an action against Warden Williams and summary judgment is appropriate.

V.     The record reveals that there are no genuine issues of material facts as to the allegations in Davis's Complaints.  Because the record proves that the State Defendants did not violate Davis's constitutional rights, no fair minded jury could find in favor of Davis on any of his claims and the State Defendants are entitled to summary judgment as a matter of law.

VI.     The State Defendants properly performed their duties without violating Davis's clearly established constitutional rights.  Therefore the State Defendants are protected from liability for Davis's claims by the doctrine of qualified immunity.

**STATEMENT OF THE FACTS**

State Defendants incorporate, as if fully set forth herein, the facts as stated in the State Defendants' Opening Brief in Support of Their Motion for Summary Judgment (D.I. 61).

## ARGUMENT

By their Opening Brief, the State Defendants have proven that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [they are] entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Therefore, the State Defendants have met the standards of Rule 56(c) and summary judgment is appropriate. *See Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir. 1999).

By his Motion for Summary Judgment, Davis tries to dispute the State Defendants' entitlement to summary judgment. But, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Only disputes that affect the outcome of a lawsuit properly preclude the grant of summary judgment. *Id.*

In this case the facts clearly show that the State Defendants did not violate Davis's constitutional rights. Further, Davis has not offered a scintilla of evidence to the contrary. Therefore the record supports the State Defendants' Motion for Summary Judgment and they are entitled to judgment in their favor and against the Plaintiff as a matter of law.

### I. State Defendants Are Immune From Liability In Their Official Capacities Pursuant To The Eleventh Amendment.

Davis fails to offer any argument in opposition to State Defendants' contention that they are immune from liability in their official capacities based on the doctrine of sovereign immunity. State Defendants stand by their argument as set forth in their Opening Brief that they are not "persons" for purposes of 42 U.S.C. § 1983. *See Will v.*

*Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Given that the State Defendants are not "persons" for purposes of § 1983, the State Defendants are outside the class of persons subject to liability under § 1983. As such, the Eleventh Amendment, and the State of Delaware's sovereign immunity, protect the State Defendants from liability. Consequently, this Court lacks jurisdiction over the State Defendants in their official capacities and Davis cannot maintain his claims against the State Defendants in their official capacities.

## II. Davis Did Not Exhaust The Administrative Remedies Available To Him. Therefore His Claims Should Be Dismissed Under The PLRA.

Davis does not address his failure to exhaust the administrative remedies available to him at HRYCI prior to filing his § 1983 action. State Defendants maintain that Davis's failure to follow all steps of the HRYCI grievance procedure is fatal to his lawsuit. Title 42, Section 1997e(a) of the United States Code, as amended by the PLRA, states that, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 *U.S.C.* § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In this case the law required Davis to follow all steps of HRYCI's grievance procedure prior to filing a lawsuit.

Davis filed a single grievance regarding the allegations of his Complaint. (Op. Br. Ex. I). The grievance was denied. (*Id.*). Rather than appeal the denial of the grievance, Davis admits that he took no further action because he was satisfied with the

denial. (Op. Br. Ex. A. – Davis Dep. 74:21-23). By failing to follow all of the steps in the grievance process, Davis failed to exhaust all administrative remedies available to him. Davis's failure to exhaust all available administrative remedies is fatal to his claims and his Complaints should be dismissed in accordance with the PLRA.

## III. Warden Williams Cannot Be Held Liable For Davis's Claims Based Solely On The Theory Of Respondeat Superior.

Davis's Opening Brief clearly demonstrates that his claims against Warden Williams are based solely on the Warden's supervisory responsibility. In his Opening Brief, Davis states, "As Raphael Williams being the warden of Howard Young Correctional Institution he has power and the duty to make a condition light, and he refuse a serious medical need without explanation of a man with a broken jaw." (D.I. 61 at 4). Davis further argues, "It's not very professional for Warden Raphael Williams to find out the condition of Plaintiff broken jaw and not extend his power to get plaintiff to a hospital to fix his alterd [sic] face." (*Id.*). Clearly Davis contends that as the warden of HRYCI, Warden Williams should have better supervised the medical staff and "extend[ed] his power to get plaintiff to a hospital." (*Id.*).

In a § 1983 action a supervisory official cannot be held liable solely on the theory of respondeat superior. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, in order to establish supervisory responsibility a plaintiff must show that the defendant was the moving force behind any alleged constitutional violation. *Sample v. Diecks*, 885 F.2d 1099, 1116-17 (3d Cir. 1989).

Davis has not shown that Warden Williams was the moving force behind the alleged basketball incidents, the May 31 Breakfast Fight with Casey or the medical treatment he received following the fight. In fact, Davis admits that Warden Williams

did not have "actual knowledge of specific incident of plaintiff…." (D.I. 61 at 4). Davis's assertion that Warden Williams should have "extend[ed] his power" to somehow get Davis to a hospital is clearly based on what Davis perceives Warden Williams's responsibilities to be. Given that Davis's lawsuit against Warden Williams is improperly based solely on Warden Williams's perceived supervisory responsibilities this Court should dismiss all claims Davis has against Warden Williams.

## IV. Warden Williams Cannot Be Held Liable Where He Had No Personal Involvement In The Alleged Deprivation Of Davis's Rights.

Davis admits in his Opening Brief that, "Warden Raphael Williams didn't have actual knowledge of specific incident of plaintiff…." (D.I. 61 at 4). Davis goes on to state that he is "quite sure [Warden Williams] gained [knowledge] through verbal communication from staff, as well report complaints [sic] that Mr. William F. Davis jaw was broken." (*Id.*).

To support a claim for a civil rights violation under § 1983 a plaintiff must show that the accused defendant had *personal involvement* in the alleged wrongs. *Rode*, 845 F.2d at 1207 (emphasis added). Davis cannot support his claims against Warden Williams solely on the basis that Warden Williams may have heard about the incident or received complaints from Davis. *See Brookins v. Williams*, 402 F.Supp.2d 508, 512 (D. Del. 2005) (quoting *Rode*, 845 F.2d at 1208) (finding that "Grievances are not enough to impute knowledge to [a] defendant."). Rather to establish liability, Davis must prove that Warden Williams personally directed, had actual knowledge of, or acquiesced in the alleged deprivation of his constitutional rights. *Rode*, 845 F.2d at 1207.

By Davis's own admission Warden Williams had no personal involvement in the alleged incidents Davis had with Casey on the basketball court, in the May 31 Breakfast Fight or in the medical treatment Davis received following the Fight. (Davis Dep. 75:4-10, 19:2-5, 44:3-4; D.I. 61 at 4) Therefore Warden Williams played no affirmative role in the alleged deprivation of Davis's rights and cannot be held liable for Davis's claims.

**V. Davis's Bald And Unsubstantiated Allegations Are Not Supported By The Record. Therefore No Fair Minded Jury Could Return A Verdict For Davis On The Failure To Protect, Deliberate Indifference Or Failure To Investigate Claims.**

Davis's Complaints and his Motion for Summary Judgment fail to establish a genuine issue of material fact as to his claims against the State Defendants for failure to protect, deliberate indifference and failure to investigate. Therefore this Court should grant the State Defendants' Motion for Summary Judgment.

**A. The State Defendants did not violate Davis's constitutional right to protection.**

Davis alleges throughout his briefs that the State Defendants should have better protected him because they allegedly knew about the fights on the mental health tier and did not do anything to protect him from Casey. (D.I. 61 at 7-11; D.I. 69 at 2).

"[I]t is not … every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for a victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Only "a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828.

The facts of this case show that the State Defendants were not deliberately indifferent to a substantial risk of serious harm to Davis. Davis and Casey were housed

on the same pod for only one month prior to the May 31 Breakfast Fight.[1] (See Exhibit K, attached hereto and Op. Br. Ex. E). During that time Davis asserts that he and Casey had altercations on the basketball court. But Davis's assertion that these altercations were serious is not supported by the record. The basketball games in the yard are very competitive and, as a result, inmates often come into physical contact with one another. (Davies Affidavit, attached hereto as Exhibit L). Davis himself admits that the games are competitive and that he is an aggressive player. (Davis Dep. 15: 1-24). The record reflects that any alleged push or "mush" by Casey was a result of the competitive nature of the game and Davis's aggressive playing.

Further, Davis admits that what occurred between he and Casey on the basketball court was, "just a mush. … a lot of people take that as not that serious…." (Davis Dep. 17:18-19). Therefore the alleged "mushes" did not pose a substantial risk of serious harm to Davis.

Finally, Davis's actions of voluntarily participating in competitive basketball games with Casey clearly show that he did not believe Casey would cause him harm. Davis was not forced to play basketball with Casey. Rather, he chose to play a competitive game of basketball with Casey. Therefore Davis's actions show he did not believe that he was at a substantial risk of serious harm from Casey.

The facts of this case clearly demonstrate that the State Defendants had no reason to believe that Casey would cause Davis serious harm. Therefore, no fair minded jury

---

[1] Housing Records indicate that Davis and Casey were housed on the same pod in April-May 2003, over one year prior to the May 31 Breakfast Fight, for approximately 45 days and then again in May 2004 for approximately 30 days. (See Exhibit K, attached hereto and Op. Br. Ex. E).

could find in favor of Davis on his failure to protect claim and the claim should be dismissed.

**B. The State Defendants provided Davis access to medical attention and treatment and were not deliberately indifferent to his medical needs.**

Despite his assertion that the medical care he received was inadequate, Davis never contends that the State Defendants refused him access to medical treatment. In fact, the record shows that the officers present during the May 31 Breakfast Fight immediately took Davis to the infirmary following the fight. (Op. Br. Exs. B & C). Further, Davis himself admits that he was immediately taken to the infirmary and examined by a nurse. (Davis Dep. 28:22-23). Approximately three hours after he left the infirmary a nurse visited Davis on the tier and examined him again. (Op. Br. Ex. C). The day after the fight, Davis received an x-ray of his jaw at St. Francis Hospital. (Op. Br. Ex. D). Following his x-ray, Davis was transported back to HRYCI and housed in the infirmary. (Op. Br. Ex. E). Davis received surgery on his jaw on or about June 11, 2004 – less than two weeks after the May 31 Breakfast Fight. (Op. Br. Ex. F). Following the surgery, Davis was transported back to HRYCI's infirmary. Davis remained in the infirmary at HRYCI until discharged on or about July 6, 2004. (Op. Br. Ex. E).

Davis asserts that the State Defendants were deliberately indifferent to his needs because he waited two weeks to have surgery. "In order to succeed in an action claiming inadequate medical treatment, a prisoner must show more than negligence; he must show 'deliberate indifference' to a serious medical need." *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Nothing in the record indicates that the State Defendants prevented Davis from receiving surgery. Further, Davis has not provided any evidence that indicates that he should not have had to wait two weeks or that waiting two weeks is

unusual or caused him undue hardship or pain. Moreover, during that two week period, Davis received an x-ray and was housed in the infirmary and cared for by medical staff.

Despite Davis's claims, the record in this case clearly shows that State Defendants afforded Davis access to prompt medical attention and treatment immediately following the May 31 Breakfast Fight with Casey. Therefore Davis cannot prove the State Defendants were deliberately indifferent to his medical needs and this claim should be dismissed.

**C. The State Defendants investigated the events alleged in Davis's Complaints. Moreover any failure to investigate does not constitute a violation of Davis's constitutional rights.**

Davis argues in his Answering Brief that Deputy Warden Emig is lying when he states that the May 31 Breakfast Fight was investigated. (D.I. 69 at 2). The evidence, however, clearly shows that HRYCI staff investigated the incident.

On the same day as the May 31 Breakfast Fight, the officers involved in stopping the fight filed Incident Reports detailing the events that occurred. (Op. Br. Ex. B). Moreover Officer Provone Cropper conducted an investigation into the events surrounding the fight. (Emig Affidavit at ¶ 4). Davis concedes that he was interviewed by Officer Cropper for this investigation. (Davis Dep. 61:16-24). Therefore, despite Davis's allegation, the May 31 Breakfast Fight was investigated by HRYCI staff.

Moreover, an alleged failure to investigate does not constitute a constitutional violation. Davis has no constitutional right to have the May 31 Breakfast Fight investigated according to his personal satisfaction. The evidence shows that the incident was investigated and that Casey received a sanction for his role in the fight. Therefore,

Davis has no basis for his claim and judgment should be granted in favor of the State Defendants on the failure to investigate claim as a matter of law.

## VI. State Defendants Are Immune From Liability In Their Individual Capacities Pursuant To The Doctrine Of Qualified Immunity.

Davis's briefs fail to address the State Defendants' argument that they are entitled to qualified immunity on all claims. State Defendants maintain that the doctrine of qualified immunity immunizes them from liability, provided that their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established when, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

In this case the record demonstrates that the State Defendants did not violate Davis's clearly established rights. First, Officers Mays and Davies had no duty to protect Davis from Casey where Davis voluntarily participated in the basketball games and admitted that the alleged pushes were not that serious. Second, the State Defendants stopped the fight between Davis and Casey in accordance with HRYCI's rules and regulations and provided Davis immediate access to medical care in the infirmary. Finally, officers at HRYCI investigated the May 31 Breakfast Fight and sanctioned Casey as a result of the fight. Taking all of these facts together, the State Defendants did not violate Davis's clearly established rights. Therefore the State Defendants are entitled to qualified immunity on all of Davis's claims.

**CONCLUSION**

No fair minded jury could find on behalf of Davis for any of his claims. First, the State Defendants are immune from liability for Davis's claims in their official and individual capacities. Second, Davis is prevented from bringing his claims because he failed to follow the mandates of the PLRA. Third, Davis cannot maintain a claim against Warden Williams solely on the basis of his supervisory responsibilities. Fourth, Davis has no claims against Warden Williams because the Warden was not personally involved in the events alleged in Davis's Complaints. Finally, no fair minded jury could return a verdict for Davis where the State Defendants had no duty to protect Davis from Casey; where the State Defendants provided Davis with immediate access to medical attention and treatment following the fight with Casey; and where the State Defendants investigated the May 31 Breakfast Fight and disciplined Casey for the fight. Therefore the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and the State Defendants are entitled to summary judgment on all claims.

**CERTIFICATE OF SERVICE**

I, Erika Y. Tross, Esq., hereby certify that on November 15, 2007, I caused a true and correct copy of the attached ***State Defendants' Answering Brief In Opposition To Plaintiff's Motion For Summary Judgment and Reply Brief In Support Of The State Defendants' Motion For Summary Judgment [Re: D.I. 58, 60, 61, 69]*** to be served on the following individuals in the form and manner indicated.

**Via First Class Mail**
Inmate William F. Davis, III
SBI #162762
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

**Via Electronic Delivery**
**& First Class Mail**
Daniel L. McKenty, Esq.
McCullough & McKenty, P.A.
1225 N. King Street, Suite 1100
P.O. Box 397
Wilmington, DE 19899-0397

*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
Delaware Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400