## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM F. DAVIS, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 05-067-SLR |
| | ) |
| WARDEN RAPHAEL WILLIAMS, | ) |
| C/O DAVIES, CAPTAIN EMMIT[1], | ) |
| C/O REGINALD MAYES[2], DEBRA | ) |
| MUSCARELLA, NURSE JEREMY, | ) |
| and OFFICER FRED WAY, | ) |
| | ) |
| Defendants. | ) |

William F. Davis, III, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

Erika Yvonne Tross, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants Raphael Williams, Kerry Davies, Mark Emig, Reginald Mays, and Fred Way.

Patrick G. Rock, Esquire, Heckler & Grabizzio, Wilmington, Delaware. Counsel for Defendant Debra Muscarella.

## MEMORANDUM OPINION

Dated: August ᴣ⁰ , 2008
Wilmington, Delaware

[1]The correct name is "Mark Emig."

[2]The correct spelling is "Mays."

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff William F. Davis ("plaintiff"), an inmate at the James T. Vaughn Correctional Center, formerly known as the Delaware Correctional Center ("DCC"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983. Presently before the court are motions for summary judgment filed by plaintiff and State defendants Raphael Williams ("Williams"), C/O Kerry Davies ("Davies"), Mark Emig ("Emig"), Reginald Mays ("Mays'), and Fred Way ("Way") (collectively, "State defendants") with supporting memoranda and responses thereto.[3] (D.I. 60, 76) Also before the court are defendants' motion to join and plaintiff's motion to amend and motions to appoint counsel. (D.I. 57, 68, 73, 79) For the reasons set forth below, the court will grant State defendants' motions to join and for summary judgment, will deny plaintiff's motions for summary judgment and to appoint counsel, and will grant plaintiff's motion to amend.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff alleges that, when he was housed at the Howard R. Young Correctional Institution ("HRYCI"), State defendants failed to protect him from fellow inmate Casey ("Casey") even though he complained of Casey's conduct. Plaintiff and Casey were later involved in a fight and plaintiff's jaw was broken by Casey.

Casey and plaintiff were both housed on the mental health tier, 1D, at the HYRCI. (D.I. 62, ex. A, 7) At some point in time, Casey began calling plaintiff a child molester, even though plaintiff is serving a sentence for a burglary conviction. (Id.) Plaintiff believed that being called a child molester put him at risk. (Id. at 3) Plaintiff

_____

[3]Discovery ended on August 13, 2007. September 13, 2007 was the deadline for filing summary judgment motions. (D.I. 40)

testified that Correctional Officers ("C/O") Mays and Reynolds knew Casey was calling him a child molester, but he did not indicate when he told them of Casey's statements. (Id. at 4) Plaintiff was seeing his counselor, Debra Muscarella ("Muscarella"), and made mention on several occasions that Casey called him a child molester. (D.I. 61, ex. A, 25) She told him she was "basically going to take care of it." (Id.) He complained to her about four times prior to the time his jaw was broken. (Id.)

Two incidents preceded the fight that resulted in plaintiff's broken jaw. The first incident occurred on May 16, 2004, during recreation at the HRYCI, when plaintiff was playing basketball with fifteen other inmates. (Id. at 5, 11) Mays was supervising the inmates. (Id.) The game was competitive and plaintiff was playing aggressively. (Id.) Casey did not like plaintiff's aggressive play and pushed or "mushed" him in the face. (Id.) Plaintiff definitely knows that Mays saw the push. (Id.) According to plaintiff, Mays should have reported the incident, even though the "mush" or push was "not that serious." (Id. at 5-6)

The second incident occurred a few days later when ten inmates, including plaintiff and Casey, were playing basketball. (Id.) Davies supervised the game. (Id.) During the game Casey "mushed" or pushed plaintiff a second time because Casey did not like how plaintiff was playing and, according to plaintiff, because of the prior name calling. (Id.) Plaintiff testified that Casey did not call him a child molester during the basketball game, but had called him that every day while they were on the tier. (Id.) According to plaintiff, Davies must have seen the "mush" or push because the game was entertaining to watch. (Id.) He testified that he did not have to tell Davies about the "mush" or push because she saw it, but he also testified that he mentioned it to her.

-2-

(Id.) She did nothing after the "mush" or push. (Id.) According to Davies, plaintiff never approached her before, during, or after the game to express concerns for his safety. (D.I. 71, ex. L) She did not see plaintiff and Casey engage in a physical altercation or see Casey threaten plaintiff. (Id.)

On May 31, 2004, plaintiff's jaw was broken by Casey while they were in the breakfast chow line. The incident occurred when Casey tried to butt in line in front of plaintiff, called plaintiff a child molester, and they began arguing. (Id. at 7-8) Plaintiff's back was turned and seconds later Casey hit him in the jaw; plaintiff fought back in defense. (Id.) C/O McReynolds saw what happened and called a Code 8 for assistance to stop the fight. (Id. at 10); ex. B) Officers responded to the code and stopped the fight. (D.I. 61, ex. A, 10; ex. B)

Way took plaintiff to the infirmary and plaintiff was examined by Nurse Jeremy ("Jeremy").[4] (D.I. 61, ex. A, 8) At the time, plaintiff was able to open and close his mouth and talk clearly. (D.I. 61, ex. C) Plaintiff was given gauze to absorb blood, Motrin for pain, and ice. (D.I. 61, ex. A, 8, ex. C) Jeremy referred plaintiff to see a "mid level provider" on June 1, 2004. (Id.) Plaintiff returned to his cell and later that day was examined by a nurse. At the time he was still able to open his mouth and talk. (Id.) Examination the next day, however, revealed that plaintiff was unable to open his mouth for examination and unable to fully close his mouth due to pain. (Id.) He complained of pain and his right jaw was swollen. (Id.) On that same day plaintiff was taken to St. Francis Hospital for an x-ray of his jaw and it revealed a "bilateral mandibular fracture."

---

[4]Jeremy has not been served. The USM-285 form states that "Def. no longer works @ HRYCI. Ret. unexecuted." (D.I. 65.)

(D.I. 61, ex. D)  Plaintiff testified that the date of the x-ray report must be wrong because he did not have an x-ray the day after he was injured. (D.I. 61, ex. A, 18)  On June 2, 2004, plaintiff was placed on a liquid diet. (Id. at ex. C)  Inmate housing records indicate that plaintiff was housed in the infirmary on June 2, 2004, and remained there until June 5, 2004. (D.I. 61, ex. E)  He returned to his cell on June 5, 2004 until June 10, 2004, when he returned to the infirmary. (Id.)  Plaintiff testified that, at some point in time, he went to Mays, Reynolds, and Muscarella for medical treatment and that he was finally taken to the infirmary in five or six days. (D.I. 61, ex. A, 8-9)  Plaintiff testified that he stayed in medical for another five days and then went to an outside hospital. (Id.)  On June 11, 2004, plaintiff underwent surgery at Christiana Care Health Services, spent the night there, returned to the HRYCI, and remained in the infirmary until July 6, 2004.[5] (D.I. 61, ex. A, 21, exs. E, F; D.I. 76, ex. B)

After the incident, the officers involved filed incident reports detailing the events that occurred and C/O Cropper ("Cropper") conducted an investigation. (D.I. 61, ex. A, 16-17; exs. B, G)  Casey was sanctioned with fifteen days in isolation as a result of the fight. (D.I. 61, ex. H)  At some point in time, plaintiff asked Emig, the facility investigator, to request the Office of the Attorney General ("AG") to pursue criminal charges against Casey. (D.I. 61, ex. A, 10; ex. G at ¶ 5)  Emig told plaintiff he investigated the matter; but plaintiff did not believe him because plaintiff's mother called the AG and the person she spoke to did not know what she was talking about. (D.I. 61,

---

[5]State defendants submitted a sheaf of medical records from Christiana Care Health Services, all irrelevant, and none considered by the court. (D.I. 66)

ex. A, 10) Plaintiff believes that Emig should have forwarded the information.[6] (Id.)

On July 16, 2004, plaintiff submitted a grievance complaining of the events that led up to his injury. (D.I. 61, ex. A, 7, 19; ex. I) The grievance refers to the first basketball incident, the second basketball incident, and the fight during breakfast. (D.I. 61, ex. I) Plaintiff requested that someone look into the matter to determine why Davies and Mays did not do anything about Casey and why the incidents were not documented. (Id.) The grievance indicates that plaintiff wanted to press charges against Casey. (Id.) Sergeant Mary Moody ("Moody"), the inmate grievance chairperson, responded to plaintiff's grievance on August 6, 2004 and informed him that he could not request or demand disciplinary action on staff and that he should submit a written complaint to Captain Bamford. (Id.) Moody also told plaintiff that his request was inappropriate and/or not complete and that he must make an actual request. (Id.) Plaintiff testified that what he asked for, "they said they can't do it. So [he] was all right with it." (D.I. 61, ex. A, 7) He explained that if an inmate is not satisfied with the finding, then the inmate takes it to the next level, but he was satisfied with the answer given him. (Id.) He did not appeal. (Id. at 20)

## III. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

A court shall grant summary judgment only if "the pleadings, depositions,

---

[6]Emig states that he submitted the information to the AG, and it responded that it would not pursue charges against Casey because the inmates were fighting. (D.I. 61, ex. G, ¶¶ 7, 8). The AG concluded that the matter would best be handled internally by the correction facility. (Id.)

-5-

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). Indeed, to survive a motion for summary judgment, plaintiff cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). If the nonmoving party fails to make a sufficient showing on an essential

element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Initially, the court notes that State defendant Way moves for joinder in the State defendants' motion for summary judgment found at D.I. 60, 61 and 71. (D.I. 79) The court will grant the motion. State defendants move for summary judgment on the grounds that they are entitled to immunity under the Eleventh Amendment for claims raised against them in their official capacities; plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"); plaintiff cannot maintain a cause of action against Williams based solely on his supervisory responsibilities and position and because Williams had no personal involvement in the alleged wrongs; there are no genuine issues of material facts because State defendants did not violate plaintiff's constitutional rights, and State defendants are entitled to qualified immunity. Plaintiff moves for summary judgment and argues that the eleven-day delay in treatment after his injury evidences that State defendants were deliberately indifferent to his serious medical needs.

## B. Discussion

### 1. Eleventh Amendment Immunity

The claims against State defendants in their official capacities are barred by the Eleventh Amendment. See Callahan v. City of Philadelphia, 207 F.3d 668 (3d Cir. 2000). The State has not waived its immunity from suit in federal court; although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. Brooks-McCollum v. Delaware, 213 Fed. Appx. 92, 94

-7-

(3d Cir. 2007) (citations omitted).  Moreover, the claims against State defendants cannot be maintained because State defendants, in their official capacities, are not "persons" within the meaning of 42 U.S.C. § 1983.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (neither states nor state officials sued in their official capacities for money damages are "persons" within the meaning of § 1983);  see Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  Therefore, the court will grant State defendants' motion for summary judgment on the claims raised against them in their official capacities.

## 2. Respondeat Superior/Personal Involvement

State defendant Williams contends that the claims against him fail because he was not personally involved in the alleged wrongs and liability cannot be based upon respondeat superior.  Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights.  See  Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978).  Liability in a § 1983 action, however, cannot be predicated solely on the operation of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) (citations omitted).  Regardless, a plaintiff may set forth a claim for supervisory liability under § 1983 if he "(1) identif[ies] the specific supervisory practice or procedure that the supervisor failed to employ, and show[s] that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory

-8-

practice or procedure."  Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)
(citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).  It is not enough for a
plaintiff to argue that the alleged injury would not have occurred if the supervisor had
"done more."  Id.  He must identify specific acts or omissions of the supervisor that
evidence deliberate indifference and establish a link between the act or omission and
the ultimate injury. Id.

It is apparent from plaintiff's testimony that Williams had no personal involvement
in plaintiff's alleged constitutional deprivations and is named as a defendant solely
based upon his supervisory position.  Indeed, plaintiff testified that Williams is named as
a defendant because he is in charge of any harassment and he should have known or
been notified that plaintiff was being called a child molester because whoever was in
charge of mental health should have been notified.  (D.I. 61, ex. A, 3-4)  Plaintiff testified
that Williams is the "overseer of everything" and he should have known that being called
a child molester put plaintiff at risk.  (Id. at 3-4)  Plaintiff had no conversations with
Williams and the only notice plaintiff gave Williams of his problem with Casey occurred
when he sent Williams a copy of the complaint.  (Id. at 4, 12)  Williams did not witness
the fight when plaintiff's jaw was broken but, nonetheless, plaintiff testified that a warden
should know anything that is major.  (Id. at 12)

Although plaintiff filed one grievance regarding the actions of Casey and the
C/O's, participation in the after-the-fact review of a grievance is not enough to establish
personal involvement. See, e.g., Brooks v. Beard, 167 Fed. Appx. 923, 925 (3d Cir.
2006) (allegations that prison officials and administrators responded inappropriately to
inmate's later-filed grievances do not establish the involvement of those officials and

administrators in the underlying deprivation). See also Cole v. Sobina, Civ. No. 04-99J, 2007 WL 4460617 (W.D. Pa. 2007); Ramos v. Pennsylvania Dep't of Corr., Civ. No. 06-1444, 2006 WL 2129148 (M.D. Pa. 2006) and Jefferson v. Wolfe, Civ. No. 04-44 ERIE, 2006 WL 1947721 (W.D. Pa. 2006). Cf. Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

Finally, the record does not indicate that Williams received information from any source regarding the conduct of Casey or that he was aware that such conduct created an unreasonable risk of injury to plaintiff to which Williams remained "deliberately indifferent." For the foregoing reasons, the court will grant State defendant Williams summary judgment on the claims raised against him.

### 3. Failure to Protect

Plaintiff raises an Eighth Amendment failure to protect claim premised upon his claim that Casey called him a child molester, this placed him at risk, and Casey ultimately injured him. Plaintiff argues that the risk was obvious because of inmate fights on the mental health pod and because many fights occur during chow.

With respect to this claim, plaintiff has the burden to show that State defendants knew of, and disregarded, an excessive risk to his health or safety. Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir.2001) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Id.; see also Hamilton v. Leavy, 117 F.3d 742 (3d Cir. 1997). In order to survive State defendants' summary judgment motion, plaintiff must

-10-

produce sufficient evidence supporting the inference that State Defendants "knowingly and unreasonably disregarded an objectively intolerable risk of harm." Beers-Capitol, 256 F.3d at 132 (internal citation and quotation omitted); Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). Knowledge may be shown where the official has actual notice of the risk, Nami v. Fauver, 82 F.3d 63, 67-68 (3d Cir. 1996), or where the risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." Farmer, 511 U.S. at 842.

The record reflects that the two "mushing"/pushing incidents occurred when plaintiff and Casey were playing basketball with several other inmates. Mays supervised the first basketball game and Davies supervised the second basketball game. Plaintiff conceded that the push during the first basketball game was not that serious and that the game was aggressive. While plaintiff testified that Mays knew Casey was calling plaintiff a child molester, the record does not indicate that Mays had the information prior to the first basketball game.

The second incident also occurred during a basketball game (according to plaintiff) because Casey did not like the way plaintiff played the game and because, prior to the game, Casey had been calling plaintiff a child molester. Casey, however, did not call plaintiff a child molester during the basketball game. Plaintiff contends that Davies saw the push and did nothing afterward. Conversely, Davies contends that she did not see the push or see Casey threaten plaintiff. The last incident occurred when Casey broke plaintiff's jaw while they were in the dining hall for breakfast.

The question in the instant case is whether State defendants were on notice that plaintiff allegedly faced a substantial risk of being assaulted by Casey and deliberately disregarded that risk.[7]  In support of his position that State defendants had the requisite knowledge, plaintiff argues that he told certain individuals that Casey was calling him a child molester.  While plaintiff testified that he told Mays about the name calling, he did not indicate if this occurred before or after the basketball game supervised by Mays, or after plaintiff's jaw was injured.  Plaintiff testified that he told Muscarella that Casey was calling him names, but nothing in the record indicates that Muscarella passed the information along to the moving State defendants.

Plaintiff also points to the two basketball game incidents.  When viewed in the light most favorable to plaintiff as the non-movant, it is difficult to construe the basketball "mushing/pushing" incidents as providing notice that State defendants Davis, Mays, or Way knew of an excessive risk to plaintiff's safety.  By plaintiff's admission, the basketball games were played in an aggressive manner and, notably, he considered at least the first incident to be of no consequence.  Moreover, the record does not indicate that Casey called plaintiff a child molester during either basketball game.  Even when coupled with plaintiff's opinion that Mays and Davies should have reported the basketball incidents, the court concludes that these facts do not reasonably permit the inference that State defendants knew of an excessive risk to plaintiff's safety.  Absent evidence allowing the inference that State defendants had actual knowledge of an

_____

[7]The court makes no findings as to the claims against Muscarella.  She did not file a dispositive motion and plaintiff testified that he told her on several occasions that Casey was calling him names.

-12-

excessive risk of harm to plaintiff, the failure to protect claim is not supported by the existing record. For the foregoing reasons, the court will grant State defendants' motion with respect to the failure to protect claim.

### 4. Medical Needs

State defendants and plaintiff both seek summary judgment on the medical needs issue. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must prove (1) a serious medical need and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. Harrison v. Barkley, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. Estelle v. Gamble, 429 U.S. 97, 107 (1976).

-13-

Plaintiff argues that the eleven day delay from the date of his injury until his surgery is evidence of deliberate indifference due to delay in treatment. He argues that Way and Jeremy exercised "poor judgment" by failing to conduct an adequate examination and ask necessary questions. He argues that his injury demanded immediate attention and he should have been taken to the emergency room.

The record reflects that plaintiff's condition was monitored almost immediately after he was injured. He was taken to the infirmary and examined, returned to his cell and examined again. The next day his jaw was x-rayed, and two days after the injury plaintiff was housed in the infirmary and placed on a liquid diet. Granted, there was a delay from the time of his injury until the time he was surgically treated. Such a delay, however, does not constitute deliberate indifference to plaintiff's medical condition. Indeed, plaintiff underwent surgery in little over a week after he was examined by a physician. Plaintiff has failed to make a sufficient showing as to necessary elements of his constitutional claims for deliberate indifference to a serious medical need. Accordingly, the court will grant State defendants' motion for summary judgment as to this issue and will deny plaintiff's motion for summary judgment.

### 5. Failure to Investigate

State defendant Emig argues that he should be granted summary judgment as the allegations against him do not rise to the level of a constitutional violation. Plaintiff relies upon the incident report that states he fought back in self-defense to support his position that Emig covered up and lied about investigating and contacting the AG to press charges against Casey.

The record reflects that, following the incident, the officers involved prepared

-14-

incident reports and Cropper investigated the matter and interviewed plaintiff. Emig told plaintiff he investigated the matter, but plaintiff did not believe him based upon a conversation plaintiff had with his mother. Nonetheless, Emig's affidavit states that he submitted the information to the AG; the AG responded that it would not pursue charges against Casey because the inmates were fighting, and that the matter would best be handled internally by the correction facility. (Id.)

The Third Circuit has found that there is no mandatory duty to investigate and pursue the prosecution of an inmate who injures a fellow inmate. See Schaeffer v. Wilson, 240 Fed. Appx. 974, 976 (3d Cir. 2007) ("[W]e have found no authority creating a mandatory duty . . . to investigate and pursue the prosecution of the inmates") (citing Inmates of Attica Corr. Facility v. Rockefeller, 477 F.2d 375, 382 (2d Cir.1973) (holding inmates failed to state a claim against state officials for failing to investigate or prosecute civil rights violations). Accordingly, plaintiff's allegations against Emig do not rise to the level of a constitutional violation. For the foregoing reasons, the court will grant State defendant Emig's summary judgment motion on the claims raised against him.[8]

## IV. MISCELLANEOUS MOTIONS

### A. Motion to Amend

Plaintiff moves to amend his complaint to name all defendants as "persons." (D.I. 57) While not clear, it appears that plaintiff wishes to raise claims against

---

[8]The court sees no need to address the exhaustion and immunity issues raised by State defendants, but notes that it appears plaintiff's complaints were considered "non-grievable."

defendants in their individual/personal capacity. To that extent, the court will grant the motion.

## B. Motions for Appointment of Counsel

Plaintiff moves for appointed counsel on the bases that he has stated a claim upon which relief may be granted, he is unable to present his claim because he has severe debilitating mental disorders and, to date, has been assisted by fellow inmates, counsel will be better able to present evidence and cross-examine witnesses, he is unable to afford counsel, and his imprisonment greatly limits his ability to litigate. (D.I. 68, 73)

A pro se litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel. See Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981); Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997). It is within the court's discretion to seek representation by counsel for plaintiff, and this effort is made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting . . . from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984); accord Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993) (representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law).

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including:

(1) the plaintiff's ability to present his or her own case;

-16-

(2) the difficulty of the particular legal issues; (3) the degree
to which factual investigation will be necessary and the ability
of the plaintiff to pursue investigation; (4) the plaintiff's capacity
to retain counsel on his own behalf; (5) the extent to which a
case is likely to turn on credibility determinations; and
(6) whether the case will require testimony from expert witnesses.

Tabron, 6 F.3d at 155-57; accord Parham, 126 F.3d at 457; Montgomery v. Pinchak,

294 F.3d 492, 499 (3d Cir. 2002).

Upon consideration of the record, the court is not persuaded that appointment of

counsel is warranted at this time. Plaintiff has demonstrated an ability to present his

claims and, at this juncture, it does not appear that prejudice will result in the absence of

counsel. Therefore, the motions for appointment of counsel will be denied without

prejudice.

## V. CONCLUSION

Based upon the above analysis, the court will grant State defendants' motion to

join and motion for summary judgment and will deny plaintiff's motion for summary

judgment. The court will grant plaintiff's motion to amend and will deny without

prejudice plaintiff's motions for appointment of counsel. Debra Muscarella is the only

remaining defendant. An appropriate order will issue.